WILLIAM V. CLARK, Appellant, *v*. THE BOARD OF SUPER-
VISORS OF SARATOGA COUNTY, Respondent.

In November, 1866, the board of supervisors of Saratoga county, acting
under the authority conferred upon such board by the acts of 1864 and
1865 (Chaps. 8 and 72, Laws of 1864, chap. 41, Laws of 1865), passed
resolutions providing for raising, by taxation, a portion of the bounty
debt, and directing the county treasurer " to procure an extension of the
time of payment of the residue." Similar resolutions were passed each year
down to 1875, and the annual accounts of the county treasurer with the
accompanying vouchers showed that he made new loans and issued new
obligations each year. In an action upon two notes given by the county
treasurer to plaintiff for money loaned which, upon their face, purported
to have been issued in pursuance of said resolutions, it appeared that said
officer had fraudulently overissued notes to a large amount, and that plaint-
iff was, with the exception of one year, a member of the board of supervisors
from 1863 to 1875, and chairman of the board for several years. There was
no proof that at the time the money was borrowed it was not needed for the
purposes specified in the resolutions, or that it was misappropriated.
*Held*, the presumption was that the county treasurer actually borrowed
this money, as authorized, and applied it to the uses of the county,
that the fact that plaintiff was a member of the board did not make him
chargeable with knowledge of the wrongs perpetrated by the county
treasurer; but even if so chargeable, this would not constitute a defense.

(Argued December 2, 1887; decided December 13, 1887.)

APPEAL from judgment of the General Term of the Supreme
Court in the third judicial department, entered upon an order
made February 12, 1885, which affirmed a judgment in favor
of defendant entered upon a decision of the court on trial
without a jury.

This action was brought upon two notes issued to plaintiff
by Henry A. Mann, then treasurer of the county of Saratoga,
of one of which notes the following is a copy:

" No. 67.     SARATOGA COUNTY TREASURER'S OFFICE,
              BALLSTON SPA, *April* 23, 1875.

" In pursuance of a resolution passed November, 1874, by
the board of supervisors of Saratoga county, the county of
Saratoga promises to pay at the Saratoga county treasurer's

office, on the 15th day of February, 1876, W. V. Clark or bearer seven hundred dollars, at 7 per cent interest for value received.

"$700.                    "HENRY A. MANN, *Treasurer.*"

The other note was similar in form, save that it was dated August 5, 1875, and was for the sum of $800.

Both notes were given for moneys advanced by plaintiff and ostensibly borrowed by Mann in pursuance of the resolution referred to therein. That resolution authorized the county treasurer to borrow on the credit of the county $8,000 for one year.

It appeared, among other things, that in November, 1865, the county of Saratoga was indebted to the amount of $618,000 for bounty moneys borrowed on its credit. This debt was represented by obligations signed by Mann as county treasurer, some in the form of notes similar to those in suit, others in the form of bonds. At the annual meeting of the board of that year, resolutions were passed directing the county treasurer to procure an extension of certain portions of said debt. At each subsequent annual meeting down to and including 1874, said board passed similar resolutions, the plan being to pay part of the debt each year, and to extend the remainder. The county treasurer assumed to exercise the authority so given to extend the debt under these annual resolutions by borrowing money to pay maturing obligations, and giving notes therefor, or by giving new obligations to take up the old ones. If the treasurer had actually applied the moneys raised by taxation each year for the payment of said indebtedness to that purpose, the amount unpaid in February, 1875, would have been about $8,000. He, however, misappropriated large amounts thereof and actually borrowed that year $138,631.

The further material facts are stated in the opinion.

*L. B. Pike* for appellant. The power to renew or continue the indebtedness was complete. (Laws of 1864, chap. 8, § 15; Potter's Dwarris, 123 Max. 7, 8; *Williamsport* v. *Comm.* 84 Penn. St. 487; *Mayor, etc.,* v. *Inman,* 57 Ga. 370;

*People* v. *Brennan,* 39 Barb. 523, 545; *Ketchum* v. *Buffalo,* 21 id. 294; 14 N. Y. 356, 365; *Meech* v. *Buffalo,* 29 id. 198; *Tucker* v. *Raleigh,* 75 N. C. 267; *Hall* v. *Lauderdale,* 46 N. Y. 70; *Le Couteulx* v. *Buffalo,* 33 id. 333; R. S., pt. 1, chap. 12, tit. 1, art. 1, § 2.) The authority given the agent, the county treasurer, to extend, carried with it the power to do the acts necessary to the attainment of the purpose. (*Hall* v. *Lauderdale,* 46 N. Y. 73; Story on Agency, § 97; *Com. Bank* v. *Norton,* 1 Hill, 504; *Williams* v. *Getty,* 31 Penn. St. 464; *Sup'rs v Seabury,* 11 Abb. [N. C.] 461, 671; *Jagger I. Co.* v. *Walker,* 76 N. Y. 521; *Belmont* v. *Coleman,* 1 Bosw. 188; *Nelson* v. *Eaton,* 26 N. Y. 414, 415; *Farmers L. & T. Co.* v. *Curtis,* 7 id. 466; *De Groff* v. *Am. Linen T. Co.* 21 id. 124; *Farmers L. & T. Co.* v. *Clowes,* 3 id. 470; *Partridge* v. *Badger,* 25 Barb. 146; *Lee* v. *Sandy Hill,* 40 N. Y. 442; *N. Y. & B. S. M. & L. Co.* v. *Brooklyn,* 71 id. 584; *Jackson* v. *Marsh,* 6 Cow. 281; *People* v. *Supr's,* 34 N. Y. 516; *Magee* v. *Cutler,* 43 Barb. 253.) The power to borrow and extend being in the county, an irregular exercise of that power cannot defeat plaintiff. (*Moore* v. *Mayor, etc.,* 73 N. Y. 239; *People* v. *Sup'rs,* 43 Barb. 398; 34 N. Y. 516; *Magee* v. *Cutler,* 4 Barb. 240; *Faulkner* v. *Metcalf,* id. 258; *People* v. *Sup'rs,* 43 N. Y. 130; The county obligations were valid in whatever form they were given for this debt. (*People* v. *Sup'rs,* 34 N. Y. 522; 6 Week. Dig. 370; *People* v. *Mead,* 24 N. Y. 114; *Kelly* v. *McCormick,* 28 id. 318, 323; *Mott* v. *Hicks,* 1 Cow. 513; *Phelps* v. *Yates,* 16 Blatch. 192; 68 Me. 160; 6 Otto, 312; *Solon* v. *Bk.,* 35 Hun, 1; *Gerwig* v. *Sitterly,* 56 N. Y. 214; *Oneida Bk.* v. *Ontario Bk.,* 21 id. 490; *People* v. *Brennan,* 39 Barb. 544; *Moss* v. *Averill,* 10 N. Y. 457; *Kelly* v. *Mayor, etc.,* 4 Hill, 263; *Williamsport* v. *Comm.,* 84 Penn. St. 487; *Ketchum* v. *Buffalo,* 14 N. Y. 375; *Moss* v. *Oakley,* 2 Hill, 265.) If an original authority were wanting the subsequent ratification by the supervisors was equivalent to an original authority. A municipal corporation can ratify an act it could originally authorize. (*Shawneetown* v. *Baker,* 85 Ill. 564;

*Peterson* v. *Mayor, etc.,* 17 N. Y. 453 ; *People* v. *Flagg,* id. 586 ; *Brady* v. *Mayor, etc.,* 1 Barb. 584 ; Story on Agency, §§ 244, 254, 255 ; *Hoyt* v. *Thompson,* 19 N. Y. 208 ; *Sup'rs* v. *Seabury,* 11 Abb. [N. C.] 461 ; *Brown* v. *Mayor, etc.,* 63 N. Y. 244 ; *People* v. *Sup'rs,* 68 id. 119.) The county having permitted its treasurer to transact its business in this manner, and having approved his acts, authorized him to continue in the same manner, and justified parties in dealing with him in that manner. (Story on Agency, §§ 89, 260 ; *Calhoun* v. *D. R. R. Co.,* 28 Hun, 379, 402.) A party dealing with a municipal corporation must see to it that the power exists, and there his duty ends. (*Belo* v. *Com'rs,* 76 N. C. R. 489 ; 7 Otto, 272 ; *Orleans* v. *Platt,* 9 id. 682 ; *Com'rs* v. *Bolles,* 94 U. S. 104 ; *Dodge* v. *Platte Co.,* 82 N. Y. 230.) The treasurer's misappropriation is chargeable to the county, and the county must raise the money again in some manner. (*Chemung Co. Bk.* v. *Sup'rs,* 5 Denio, 522, 523 ; *Bassett* v. *Ohio,* 26 O. R. 543 : *People* v. *Comptroller,* 77 N. Y. 45 ; *Federgreen* v. *Fallsburgh,* 25 Hun, 152 ; *Ketchum* v. *Buffalo,* 14 N. Y. 363–366 ; 87 id. 628 ; 98 Ill. 94.) The giving of the new obligations, if they were void, did not extinguish the debt. (43 N. Y. 159 ; 65 Barb. 303 ; 27 How. 111 ; 58 N. Y. 350 ; 46 id. 76 ; 5 Denio, 517 ; 13 Wend. 101 ; 11 id. 9 ; 15 Johns. 475 ; *Jagger Iron Co.* v. *Walker,* 76 N. Y. 521.) The notes in question, if they were void as obligations, were still valid to extend the debt, so far as to prevent the statute of limitations running under section 395, Code of Civil Procedure, and in any view of the case would so operate. (*In re Consalus,* 95 N. Y. 340 ; *Nat B'k* v. *Phelps,* 86 id. 484 ; *Smith* v. *Ryan,* 66 id. 352 ; *Kelly* v. *Weber,* 27 Hun, 8 ; *Harper* v. *Fairley,* 53 N. Y. 442 ; *Shoemaker* v. *Benedict,* 11 id. 185 ; *People* v. *Ingersoll,* 58 id. 1 ; *Huff* v. *Knapp,* 5 id. 66, 67 ; *People* v. *Stout,* 23 Barb. 346 ; *People* v. *New York,* 5 Cow., 336.) The obligations in suit are such as need not have been presented to the board of supervisors of the county to be audited by them. (1 R. S. [Banks 6th ed.], 929, § 10 ; *Blake* v. *Sup'rs,* 61 Barb. 149 ; *Chemung Co. B'k* v. *Sup'rs* 5 Den. 517 ;

*Backer* v. *Sup'rs*, 3 W. Dig. 293; *Marsh* v. *Little Valley*, 1 Hun, 554; 64 N. Y. 112; *People* v. *Hawkins*, 46 id. 9; *Newman* v. *Sup'rs*, 45 id. 686; *Bridges* v. *Sup'rs*, 92 id. 570: *Hathaway* v. *Homer*, 5 Lans. 267; *Federgreen* v. *Fallsburg*, 25 Hun 152; *Hill* v. *Sup'rs*, 12 N. Y. 52; *People* v. *Thompson*, 25 Barb. 73; *Brown* v. *Canton*, 4 Lans. 409; 64 N. Y. 112; 46 id. 9; 61 Barb. 149; 2 Hill 45; 92 N. Y. 580.) The bonds, notes and instruments being within the power of the county, even if improperly issued by the treasurer were negotiable instruments, and in the hands of a *bona fide* transferee for value, are binding on the county. (*B'k Rome* v. *Rome*, 19 N. Y. 20: *Brainard* v. *N. Y. C. & H. R. R. R. Co.*, 25 id. 495, 500; *Lindsley* v. *Diefendorf*, 43 How. 357; *People* v. *Mead*, 24 N. Y. 114; *Delafield* v. *Ill.* 2 Hill. 159; *Blake* v. *Sup'rs*, 61 Barb. 159; *Bissell* v. *M. S. R. R. Co.*, 22 N. Y. 290; 84 Penn. St. 487; 24 Am. Rep. 208; 13 Blatch. 246, 424; 12 id. 539; 12 Wheat. 70; 11 Otto. 494; 1 Wall. 83, 175, 384; 5 id. 784; 15 id. 358; 14 id. 252; 19 Alb. Law Jour. 201, 317.) Without reference to a part of the demand being within the authority the defendant is estopped from denying that the loan was authorized, because it was within the apparent authority. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; 1 R. S. [Banks 6th ed.], 865, § 14.)

*Charles S. Lester* for respondent. It was the duty of the Board of Supervisors and of the plaintiff, as a member thereof, to take the proper safeguards to provide that the moneys raised to pay the bounty debt should be properly applied for that purpose. (1 R. S., 369, §§ 21, 23.) Before giving either note, Mann had exhausted the authority thus attempted to be conferred by giving notes to the amount of over $50,000, and the notes given to the plaintiff were, therefore, clearly unauthorized and void. (*Supervisors of Rensselaer County* v. *Bates*, 17 N. Y. 242; *Chapleo* v. *Brunswick Building Soc.*, 29 Eng. [Moak's], 781; *Lowell Savings B'k* v. *Winchester*, 8 Allen, 109.) The law will not permit the plaintiff, who was one of the public agents of the county of Saratoga,

to occupy a position in which his private interests would be in conflict with his duty to his principal, and he having thoughtlessly or corruptly placed himself in such position, the law will not aid him. (*Adsit* v. *Brady*, 4 Hill, 630; *Bassett* v. *Fish*, 75 N. Y. 389; *Robinson* v. *Chamberlain*, 34 id. 389; *Shepherd* v. *Lincoln*, 17 Wend. 250; *Smith* v. *City of Albany*, 61 N. Y. 444; *Stone* v. *Hays*, 3 Denio, 575; *N. Y. Cent. Ins. Co.* v. *Nat. Pro. Ins. Co.*, 14 N. Y. 85; *Loeb* v. *Hellman*, 45 Sup. Ct. Rep. 336; *Darby* v. *Pettee*, 2 Duer, 139, 150; *Wood* v. *Waterville*, 5 Mass. 294.)

EARL, J.   All the controlling facts in this case are like those in the case of *Parker* v. *Board of Supervisors of Saratoga County*, recently decided by us (106 N. Y. 392). Both cases were tried before the same judge, and in that case he ordered judgment in favor of the plaintiff, and in this case against the plaintiff. In that case it was held by us that the county treasurer was authorized to borrow money and give notes therefor binding upon the county, but that his authority to borrow was restricted as there stated; that it is a well settled doctrine of agency, that whenever the act of the agent is authorized by the terms of the power, that is, whenever, comparing the act done by the agent with the words of the power, the act is in itself warranted by the terms used, such act is binding on the constituent as to all persons dealing in good faith with the agent; that applying that test to the acts of the county treasurer, nothing was lacking to establish his authority in the transactions with Parker, except that as it was shown that he fraudulently borrowed money and issued obligations in excess of the limit fixed in the resolutions of the board of supervisors and that those transactions may have been a part of the fraudulent dealings; that the acts of the county treasurer were within his actual authority until further evidence should be given by the defendant tending to identify the particular dealings with Parker as a part of the fraudulent dealings; that it was a just rule supported by analogies that when the act of the agent apparently conforms to the authority, and

includes the particular transaction, and is not in excess of the authority conferred, so far as third persons dealing with the agent can know, the act of the agent is presumptively within the authority conferred; that the burden of proving that it was done after the authority was spent rests upon the principal, and that the burden is not met, nor the presumption overthrown by proof that in the course of the agent's dealings, he fraudulently exceeded his authority, without showing or giving evidence from which a jury would have a right to infer that the particular transaction was unauthorized. There we sustained the plaintiff's recovery on the ground that the loans were made by Parker, in good faith; that it did not appear that the treasurer misappropriated any of the money borrowed of Parker; that the indebtedness which the treasurer was authorized to extend at no time fell short of the loans made by Parker or the notes issued in renewal, and that the defendant had failed to indentify the transactions with Parker, as in excess of the actual authority vested at the time in the treasurer. Our decision proceeded upon the theory that the case was before us substantially the same as it would have been if there had been a finding based upon positive proof that Parker had loaned the money to the county treasurer in good faith; that the transaction was authorized by the resolutions of the board of supervisors, and that the money borrowed was actually appropriated to the purposes authorized by the resolutions. The presumption raised by law was held to take the place of positive proof.

Precisely the same facts exist in this case. Beyond dispute the county treasurer was authorized by the resolutions of the board of supervisors to borrow this money and notes in the name of the county were given to the plaintiff in the same form as those which were held by Parker. There is no proof that at the precise time this money was borrowed it was not needed for the purposes specified in the resolutions, or that it was misappropriated. The presumption is that the county treasurer actually borrowed this money for the county and applied it to the uses of the county, and as we held in the Parker case

we must, under precisely similar circumstances, therefore, hold in this, that this action was not well defended.

But judgment went against the plaintiff at the Special Term from the force and effect given to the proof that at the time he loaned this money to the county treasurer he was a supervisor of one of the towns of Saratoga county, and thus a member of the board of supervisors, and that he had been such supervisor during all the years from and including the year 1863, to and including the year 1875, except the year 1866, and chairman of the board of supervisors in the years 1868, 1869, 1870 and 1875. The trial judge found as matters of fact that the plaintiff being a member of the board of supervisors and knowing the extent of the powers intended to be conferred upon the treasurer by the resolutions of the board, was in the exercise of ordinary care and prudence, bound to ascertain what the treasurer had done under such resolutions, and that he was chargeable with knowledge of the amount of the previous notes which had been issued by the county treasurer; that it was his duty as a member of the board of supervisors to inform himself as to the condition and extent of the debt of the county, and that as supervisor he was presumed to have been acquainted with the condition and extent of the debt of the county during the times he was supervisor. The plaintiff appears to have been defeated upon the ground that as a member of the board of supervisors he was wanting in the active diligence, vigilance and care which were due from him to the county, and that therefore he was responsible to some extent and in some way for the misconduct and misappropriation of the public money by the county treasurer, and hence that he should not be permitted to recover the money loaned by him to the county.

We are unable to perceive upon what theory the plaintiff could, as supervisor, be charged with knowledge of what the treasurer had done under the resolutions, or in violation of them before he borrowed plaintiff's money. The plaintiff as a public officer was bound only to exercise ordinary diligence, and there is no finding and no just inference from the evidence

that such diligence would have disclosed to him the treasurer's misfeasance, or the condition or extent of the county debt. The treasurer meant to cover up his misdoings and conceal them from the scrutiny of the board of supervisors. He was an official greatly trusted by the people of his county, having been elected for five consecutive terms of three years each to the office of county treasurer. The plaintiff was not bound under such circumstances to believe or suspect that he was a criminal and to take extraordinary precautions to protect the people against his criminal misconduct. There is no evidence that the plaintiff did not, as supervisor, act in good faith and give to the discharge of his duties, that degree of care and vigilance which the law exacts of such public officers dealing with other public officials, who also act under the sanction of an oath and the authority of law.

But we do not perceive what bearing the facts which were supposed to distinguish this case from the Parker case can have, or how they can furnish a defense to this action. Upon the proof as it appears in this record and as we are bound to take it, it is shown that the county treasurer by resolutions of the board of supervisors was authorized to borrow and did borrow in precise accordance with the terms of the resolutions, this money from the plaintiff and actually applied it to the use of the county; and we cannot comprehend how the plaintiff's carelessness or misconduct, as a member of the board of super- visors, furnishes any defense to a cause of action for the money thus loaned. Even if he was chargeable with notice that the treasurer had misappropriated some of the money which he borrowed, and had issued notes far in excess of what he was authorized to issue against the county, yet such facts would not constitute a defense to this action where it appears that the money was honestly loaned and where it must be presumed, in the absence of proof to the contrary, that it was not misappropriated but was actually applied to the use of the county. If it had appeared that the county treasurer, when he loaned this money, was acting in excess of his actual authority, and that he had misappropriated the money, and

the plaintiff was seeking to hold the principal and maintani this action because the agent in the transaction with him acted within the scope of his apparent authority, we would have had a different case to deal with, and there would have been some room for the application of the principles of law upon which the plaintiff has thus far been defeated.

We are therefore of opinion that the judgment should be reversed and a new trial granted, costs to abide event.

All concur, except PECKHAM, J., not sitting.

Judgment reversed.