Mary D. Hatch and Another, as Executors, etc., of Mary D. Sanford, Deceased, Appellants, *v.* The Fourth National Bank of the City of New York and Others, Respondents; James H. Fay, Appellant.

*A check or money received in good faith in payment of a debt — no obligation to refund the same to a person defrauded thereof — when it can be followed and recovered.*

A bank receiving in good faith a check or money, which it applies in payment of its claims against the person from whom it has been received, is not liable to refund the amount thereof to the owner of the check or money, although the check or money was wrongfully given to the bank by the person to the payment of whose obligation it was applied.

If a person defrauded of money or securities is able to trace the money, or the avails of the securities, into an account or into property owned by the wrong-doer or his assignee for the benefit of creditors, or into the hands of one who has not received the money or the avails of the securities in good faith and for value, he is entitled to recover the same.

Appeal by the plaintiffs, Mary D. Hatch and another, as executors, etc., of Mary D. Sanford, deceased, from the whole, and by the defendant James H. Fay from portions of a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 12th day of July, 1894, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the plaintiffs' complaint upon the merits.

The defendants George H. Mills, William P. Robeson and Albert H. Smith, for some time before November 15, 1890, were partners under the name of Mills, Robeson & Smith, and were engaged in business as banekrs and brokers. The defendants A. Morton Ferris, William A. Kimball and Floyd Ferris were and are bankers and brokers transacting business under the firm name of A. M. Ferris & Kimball. On November 14, 1890, Mary D. Sanford owned 100 shares of the Adams Express Company, then worth $15,000, held under a certificate issued to her, which on that day she sealed in an envelope and deposited with Mills, Robeson & Smith to be safely kept by them until November 17, 1890. Upon receiving the certificate, Albert H. Smith, without the knowledge or consent of the plaintiffs' testatrix or of any of his partners, opened the envelope,

abstracted the certificate therefrom and took the same to A. M. Ferris & Kimball, together with a certificate for eight shares of Chicago, Cincinnati, Cleveland and St. Louis preferred stock, worth $800, which certificate .he raised to eighty shares, of the apparent value of $8,000. At the same time he delivered to said A. M. Ferris & Kimball two Union Pacific first mortgage bonds. of $1,000 each. Smith executed a transfer of the certificate and pledged all of these securities with A. M. Ferris & Kimball as security for a loan of $20,000, for which sum they gave their check, payable to the order of Mills, Robeson & Smith. In the afternoon of November fourteenth Smith indorsed the check in the firm name and deposited it to the credit of the firm with the Fourth National Bank.

July 2, 1890, the defendant James H. Fay owned a bond of $1,000, issued by the Mobile and Ohio Railroad Company, which he placed in an envelope on which his name was indorsed and delivered it to Mills, Robeson & Smith for safe-keeping, which said firm safely kept until November 14, 1890, when the defendant Albert H. Smith feloniously took the bond from the envelope and delivered it to the firm of H. L. Hotchkiss & Co. as security for the payment of a loan for $10,000, for which sum Mills, Robeson & Smith received the check of Hotchkiss & Co. This check was also indorsed by Mills, Robeson & Smith, and November 14, 1890, was deposited with the Fourth National Bank.

On the 7th of November, 1890, Fay was the owner of a bond for $1,000, issued by the Chicago, Burlington and Quincy Railroad Company, which had been left by him with Mills, Robeson & Smith for safe-keeping, and on the date mentioned they pledged it with the Fourth National Bank as collateral security for the loan of $50,000, hereinafter described.

On November fifteenth Fay delivered to Mills, Robeson & Smith a check, payable to his order, for $400, to be collected for his account, which the firm on that day deposited to its credit with the Fourth National Bank.

Prior to November 7, 1890, the defendant Georgiana L. Crabb was the owner of 100 shares of the London and New York Investment Company, and of five bonds issued by the International and Great Northern Railroad Company for $1,000 each, which she had deposited for safe-keeping with Mills, Robeson & Smith, who

wrongfully, on the 7th of November, 1890, pledged them to the Fourth National Bank as collateral security for the loan of $50,000, hereinafter mentioned.

At the close of business on November 13, 1890, Mills, Robeson & Smith had to their credit in the Fourth National Bank $20,003.43, and, on the day following, they deposited to the credit of said account $266,642.88, making a total deposit of $286,646.31. Against this the firm drew checks, which were paid, to the amount of $256,327.90, leaving $30,318.41 to the credit of the firm at the close of business November 14, 1890. November 15, 1890, the firm deposited to the credit of said account $1,774.50, making a total of $32,092.91. On that day the bank paid checks of said firm amounting to $15,772.14, leaving a credit to· the firm of $16,320.77 at the close of business November fifteenth, and, the following day, the bank collected a check for $200, which was also passed to the credit of the firm.

Mills, Robeson & Smith had for some time been a customer of the Fourth National Bank. On the 17th of April, 1890, they borrowed from said bank $50,000, as security for which· they delivered a note of which the following is a copy :

" $50,000.          NEW YORK, *April* 17, 1890.

" On demand, for value received, the undersigned promise to pay to the Fourth National Bank of the city of New York, or order, at its banking office in New York city, in funds current at the New York Clearing House, with interest from the date hereof, at the rate of five cent per annum, fifty thousand dollars, having deposited with the said bank, as collateral security for the payment of this and any other liability or liabilities of the undersigned to the said bank, due or to become due, or which may hereafter be contracted or existing, the following property, viz. : As per mem. on envelope of this date of an estimated market value of $61,600, and the undersigned agree to deliver to the said bank additional securities to its satisfaction should the market value of the said securities as a whole suffer a decline of five per centum, *and also hereby give to the said bank a lien for the amount of all the said liabilities upon all the property or securities given unto or left in the possession of the said bank by the undersigned, and also upon any balance of the deposit account of the undersigned with the said bank.*

" On the non-performance of this promise, or upon the non-payment of any of the liabilities above mentioned, or upon the failure of the undersigned forthwith, with or without notice, to furnish satisfactory additional securities in case of decline as aforesaid, then, and in either such case, full power and authority are hereby given to said bank to sell, assign and deliver the whole of the said securities, or any part thereof, or any substitutes therefor, or any additions thereto, or any other securities or property given unto or left in the possession of the said bank by the undersigned for safe-keeping or otherwise, at any brokers' board or at public or private sale, at the option of the said bank or its president or cashier, without either advertisement or notice, which are hereby expressly waived. If such securities or property are sold at public sale the said bank may itself purchase the whole or any part thereof, free from any right of redemption on the part of the undersigned, which is hereby waived and released.   In case of sale for any cause, after deducting all costs and expenses of every kind for collection, sale or delivery, the said bank may apply the residue of the proceeds of the sale or sales so made to pay one or more or all of the said liabilities to the said bank, as it or its president or cashier shall deem proper, whether then due or not due, making proper rebate for interest on liabilities not then due, and returning the overplus, if any, to the undersigned, who agree to be and remain liable to the said bank for any deficiency arising upon such sale or sales.   *The undersigned do hereby authorize and empower the said bank, at its option, at any time, to appropriate and apply to the payment and extinguishment of any of the above-named obligations or liabilities, whether now existing or hereafter contracted, any and all moneys now or hereafter in the hands of the said bank, on deposit or otherwise, to the credit of or belonging to the undersigned, whether the said obligations or liabilities are then due or not due.*

" MILLS, ROBESON & SMITH."

Among the securities deposited as collateral to said note were the five International and Great Northern bonds of the value of $5,000, which were the property of Georgiana L. Crabb, and a bond of $1,000, issued by the Chicago, Burlington and Quincy Railroad Company, which was the property of James H. Fay.

On the 7th of November, 1890, Mills, Robeson & Smith borrowed $5,000 of said bank, giving a note which is a copy of the one hereinbefore set forth, except as to date, amount, rate of interest and securities pledged. With this note there were pledged 100 shares of the London and New York Investment Company, which were the property of Georgiana L. Crabb.

On the 15th of November, 1890, Mills, Robeson & Smith made a general assignment for the benefit of creditors to defendant William Watson, they having for several months previous thereto been insolvent.

On the 17th of November, 1890, the Fourth National Bank demanded of Mills, Robeson & Smith that they pay their aforesaid notes — one for $50,000 and the other for $5,000 — together with the interest due upon them, which they failed to do, and, on the same day, the bank charged the amount due on them to the account of Mills, Robeson & Smith. The demand was made and the notes charged before the bank had notice or knowledge that any of the parties to this action, other than Mills, Robeson & Smith, and Watson, their assignee, claimed to have or had any interest in the securities or in the amount to the credit of said firm. Afterwards, and before December 5, 1890, the bank sold all of the securities pledged as security for said two notes, except the bond of the Chicago, Burlington and Quincy Railroad Company, owned by James H. Fay. From the sale of the securities pledged the bank realized $41,289.38, which added to $16,320.77, the balance to the credit of the account of Mills, Robeson & Smith, and the check for $200, which was collected November 16, 1890, amounts to $57,810.15. After deducting the amount due on said two notes there remained in the hands of the bank, to the credit of the account, $2,364.19, and the bond issued by the Chicago, Burlington and Quincy Railroad Company. Among the securities sold by the bank were 100 shares of the London and New York Investment Company and five bonds of the International and Great Northern Railroad Company, which belonged to Georgiana L. Crabb. By the judgment she was awarded $2,364.19, the amount standing to the credit of the account, and she does not appeal. The judgment also awarded to James H. Fay the bond for $1,000, issued by the Chicago, Burlington and Quincy Railroad Company, but it did not

FIRST DEPARTMENT, DECEMBER TERM, 1894. [Vol. 82.

award him $630, the value of the bond of the Mobile and Ohio Railroad Company, pledged by Mills, Robeson & Smith with H. L. Hotchkiss & Co., or for the check for $400 deposited by him with Mills, Robeson & Smith November 15, 1890, and by them, on the same day, deposited with the bank. Fay appeals from that part of the judgment denying his claim to recover these two items. It was also adjudged that the plaintiffs were not entitled to recover any sum as against the bank, and the complaint was dismissed, with costs. The plaintiffs appeal from the whole of the judgment.

*George W. Wingate,* for the appellant.

*David Wilcox,* for Fourth National Bank, respondent.

*Henry II. Man,* for Georgiana L. Crabb, respondent.

FOLLETT, J.:

The appeal of the plaintiffs will be first considered, and it will be convenient to separate the facts relating to their claim from the facts relating to the claim of Fay, the other appellant.

November 15, 1890, the plaintiffs' testatrix was the owner of 100 shares of the Adams Express Company, which were worth $15,000, for which she held a certificate, which she sealed in an envelope, and on that day delivered to Mills, Robeson & Smith for safe-keeping. On the same day Mills, Robeson & Smith borrowed $20,000 of A. M. Ferris & Kimball, receiving their check for that amount, which was on that day deposited with the Fourth National Bank and credited to the account of Mills, Robeson & Smith. Smith, one of the members of the firm, unlawfully opened the envelope in which the certificate of the plaintiffs' testatrix was sealed, abstracted it and feloniously transferred it, with eight preferred shares of the Chicago, Cincinnati, Cleveland and St. Louis Railroad Company as collateral security for the loan, to A. M. Ferris & Kimball, who took the securities in good faith and without notice of the rights of the plaintiffs' testatrix, and the bank received the check in due course of business and in good faith and without notice that the loan had been obtained by the felonious acts of Smith.

It should be borne in mind that Mills, Robeson & Smith did not assume to sell to A. M. Ferris & Kimball the shares in the Adams

Express Company, and no part of the $20,000 loaned by A. M. Ferris & Kimball to Mills, Robeson & Smith was derived from the shares, but from the note of the borrowers secured in part by the shares. The shares were not transferred to the bank, nor did any money derived from a sale of them pass to the bank, and we know of no authority for the position that a bank receiving in good faith a check or money under such circumstances, which has been applied in payment of its claim against the person from whom it was received, can be made liable to refund the amount to the owner of the security wrongfully pledged as collateral to the person or firm loaning the money to the wrongdoer. The right of the bank is the same as it would have been had Mills, Robeson & Smith received payment of the check for $20,000 from the drawee and afterwards deposited the money with the bank. The authorities supporting the right of the bank to the avails of the check are clear and numerous. (*Justh* v. *Bank*, 56 N. Y. 478; *Stephens* v. *Board of Education*, 79 id. 183; *Goshen Nat. Bank* v. *State*, 141 id. 379; *Straus* v. *T. N. Bank*, 122 id. 379; *School District in Greenfield* v. *First Nat. Bank*, 102 Mass. 174.)

*Hutchinson* v. *The Manhattan Co.* (9 Misc. Rep. 343) is quite different from the case at bar. In that case the plaintiff held a bill, payable to his order, which he indorsed, "Pay to W. L. Patton & Co. or order," and delivered it to the indorsee for collection only, who indorsed it, "For deposit to the credit of W. L. Patton & Co.," and delivered it to the defendant with which they kept an account. The defendant refused to credit the draft to W. L. Patton & Co., but received it for collection. On the next day W. L. Patton & Co. made a general assignment, and, on the day following the assignment, the defendant collected the draft and then credited the avails thereof to the account of W. L. Patton & Co.

The Manhattan Company never became the owner of the bill, for it refused to credit it, but received it for collection only, and before it was collected W. L. Patton & Co. made an assignment for the benefit of creditors, and it was held that the lien given the Manhattan Company by W. L. Patton & Co. upon all securities given into, or left in their possession by W. L. Patton & Co., did not give the bank a lien upon a draft received for collection only. Had the

Manhattan Company credited W. L. Patton & Co. with the draft on the fourth of May, when delivered, an entirely different question would have been presented.

It seems quite unnecessary to distinguish from this case those cases in which plaintiffs defrauded of money and securities are able to trace the money or the avails of the securities into an account, or into property owned by the wrongdoer or his assignee, for the benefit of creditors, or into the hands of one who has not received the money or the avails of the securities in good faith and for value. It seems to us clear that the plaintiffs failed to establish any right to recover from the bank any part of the moneys which it had applied in payment of the indebtedness of Mills, Robeson & Smith to it, and the rule that defeats the plaintiffs' action is fatal to the claim of James H. Fay.

The question now arises, who has the better right, the plaintiffs or Georgiana L. Crabb, to the balance, $2,364.19, standing to the credit of Mills, Robeson & Smith?

As before stated, none of the avails of the shares of the plaintiffs' testatrix were traced to the bank, for her shares were not sold by the wrongdoers. On the contrary, the securities of Georgiana L. Crabb were pledged by the wrongdoers to the bank, which securities were sold by it after the failure of Mills, Robeson & Smith, and the avails were credited to their account. She directly traced the avails of her securities into the possession of the bank and into the account. As between her and the plaintiffs she has established the right to the balance standing to the credit of the firm.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.