The defendant herein was authorized by its charter to receive goods for storage and issue warehouse receipts, which were made negotiable and transferable by indorsement and delivery, and any holder thereof was to be taken to be the owner or pledgee of the goods mentioned in the receipt for any advance or credits on the same, subject, however, to charges for storage. When goods were received it became necessary for some one to sign and deliver the warehouse receipt, and that duty was provided for in a by-law or resolution of the company, which was introduced in evidence. It provided that after the date of the directors' meeting at which it was adopted (Aug. 1, 1890), the warehouse receipts, until otherwise directed, should be signed by either the president or treasurer. At the time of the transaction in question M.W. Stone was president of the company and F.H. Pouch was treasurer. In Nov., 1890, Mr. Stone went to the plaintiff and sought and obtained a personal loan, for which he gave *Page 562 
his own note, and as collateral security for its payment he gave a warehouse receipt purporting to be issued by the defendant, the material portion of which is as follows:
"NEW YORK, Nov. 4, 1890.
"Received on storage at the `American Docks' for account of M.W. Stone one hundred and sixty-two bales of cotton, marked G B, subject to the order of himself, on payment of the charges accrued thereon and surrender of this receipt.
 "M.W. STONE, "President."
Indorsed upon this receipt was the following: "The property mentioned below is hereby released from this receipt for delivery from warehouse. M.W. Stone."
The officers of the plaintiff with whom the loan was effected knew at the time that the Stone who obtained the loan and the Stone who was president of the defendant were one and the same individual, and they knew that the transaction as to the loan was a personal one with Mr. Stone and that the defendant had nothing to do with it. The plaintiff made the loan upon the faith of the collateral security furnished by the receipt. The note was not paid at its maturity, and when demand was subsequently made by plaintiff upon defendant for the cotton mentioned in the receipt, it appeared that there had never been any cotton deposited with the defendant and that the receipt in that respect stated a falsehood.
The defendant refused to deliver any cotton, and the plaintiff brought this action, claiming to be a bona fide holder for value of the receipt, and that the defendant was bound to deliver to it the cotton mentioned therein or else pay its value.
The officers of the plaintiff at the time of the loan had known Mr. Stone for some years, but there had never been any transactions between plaintiff and Mr. Stone as representing the defendant further than that the latter had on some few occasions come to the plaintiff's banking house to mark off cotton which was discharged on certificates held by plaintiff for other parties, but Mr. Stone had never come there to *Page 563 
borrow money for defendant. The plaintiff made no inquiries at the time of the loan as to the extent of the power of Mr. Stone to act for defendant and sign receipts.
The question of the liability of the defendant turns upon the construction given to the by-law or resolution above mentioned. Did it give authority to the president to sign receipts in his own case?
I think that if the president had issued a receipt similar to the one in question, except that it acknowledged the receipt of cotton from some third person, although such named person had not in fact deposited any cotton, yet in such case the defendant would have been liable because the president had general authority under the by-law to issue receipts for cotton deposited by third parties, and, therefore, when he issued a receipt where no cotton had been received, although it was a violation of his authority and of his duty, yet the defendant would be held responsible on account of such general authority to give receipts. This is upon the principle decided in Bank of Batavia
v. Railroad Co. (106 N.Y. 195) and cases cited. That principle is that where an agent has been clothed by his principal with power to do an act, in case of the existence of some fact peculiarly within the knowledge of the agent, and where the doing of the act is in itself a representation of the existence of that fact, the principal is estopped from denying its existence as against third parties, dealing with the agent in good faith and in reliance upon the representation.
I also think that if the by-law clothed Mr. Stone, the president, with general authority to issue receipts to himself for cotton which he actually deposited, if with such authority he issued a receipt where he had not in fact deposited any cotton, the defendant would be liable to respond to a bona fide holder for value of such receipt. These two propositions I do not understand the defendant to dispute, or at least he does not regard them as antagonistic to his argument.
We come, then, to the consideration of the proper construction of the by-law. In the light of the general rules of *Page 564 
law upon the subject of principal and agent, we are of the opinion that the by-law or resolution in question ought not to be construed as clothing either the president or the treasurer with any authority to issue receipts to himself for cotton which in truth had been deposited by him. It is an acknowledged principle of the law of agency that a general power or authority given to the agent to do an act in behalf of the principal, does not extend to a case where it appears that the agent himself is the person interested on the other side.
If such a power is intended to be given it must be expressed in language so plain that no other interpretation can rationally be given it, for it is against the general law of reason that an agent should be intrusted with power to act for his principal and for himself at the same time. (Claflin v. Bank, etc., 25 N.Y. 293;Pratt v. Fire Ins. Co., 130 id. 206-216; Neuendorf v.World Ins. Co., 69 id. 389; Manhattan Co. v. Railroad Co.,
139 id. 146.) The by-law is general in its terms and could be fully carried out to its fair and legitimate purpose by excluding from its meaning the case of either officer acting in his own personal matter. The case of Titus v. Turnpike Co. (61 N.Y. 237) is unlike this case. The learned chief commissioner points out in his opinion what the difference is between an agent acting in matters for a principal in which he is himself the other party, and the mere act of an officer signing the scrip issued by a corporation where he is himself the owner of such scrip. The by-law in that case provided that the scrip should be signed by both the president and the treasurer, and the president was by the charter necessarily a stockholder. The case was one in which such an officer either had to go without any evidence of his ownership of stock except what the books might show, or else he was to be permitted to sign the scrip. Upon the special facts in that case, the decision held that the president and the treasurer had the right to sign the scrip owned by and issued to themselves.
Nor is the case of The Goshen Bank v. The State (141 N.Y. 379) an authority in point here. In that case it appeared that the cashier had power to draw drafts for his own use or *Page 565 
payable to his own order upon the same terms that he had to draw a draft for a stranger, viz., upon payment to the bank of the amount of the draft.
When the cashier issued such a draft, he was acting within the scope of his apparent authority, and the very act of issuing the draft was a representation of the existence of the fact that the draft was paid for. And we also held, for the reasons therein stated, that there was a difference in the case of bank or cashier's drafts from most other cases of agency.
The difference between this case and those which have been cited by the plaintiff is that in the cited cases the terms of the authority given to the agent were such that the agent had power, upon the existence of a certain fact, to do the very act which was in question, whereas in this case we hold that by the true construction of the terms of the authority given to the president, he had no power in any case to sign a receipt such as is now before us.
We are, therefore, of the opinion that upon the evidence, as presented to the trial court, the plaintiff made out no cause of action.
It is, however, claimed upon the part of the plaintiff that there was error in the ruling of the trial judge in refusing to receive evidence of what Mr. Stone said at the time when he procured the loan, and that if he had received the evidence the plaintiff might then have made out a case. We think the judge was right in his decision. The transaction with plaintiff was indisputably a personal one on the part of Mr. Stone. This fact was known by the officers of the plaintiff, and is also not disputed. The declarations of one who is in some matters an agent for another, can only be admissible against his principal when such agent is acting in the affairs of his principal, and within the scope of his actual or apparent authority.
This was no such case. There was no actual or apparent authority conferred upon Stone to receipt for the defendant in any case in which it appeared that he was the person who deposited the cotton; and when he was engaged in a private and personal transaction with the plaintiff, known to be such *Page 566 
by the plaintiff, he could make no declarations which would bind the defendant. (Manhattan Life Co. v. Railroad Co., 139 N Ysupra; and cases cited; Moores v. Bank, 111 U.S. 156 at 164.) The acts of Stone while in the bank, such as making the note, assigning the insurance policies and delivering the receipt in question, were admitted in evidence in the course of the attempt of plaintiff to make out a cause of action, and, as all the facts cannot be proved at once, it was proper to admit these facts, which, taken with others afterwards to be shown, might make out a case against the defendant. But the claim of a right on the part of the plaintiff to prove declarations of Stone, made while he was not in the performance of any duty pertaining to his agency, and while on the contrary he was confessedly engaged in an outside and personal transaction, cannot be assented to. The cases which assert the doctrine that when the acts of the agent are admissible for the purpose of attempting to bind the principal, then his declarations made at the same time are admissible, are cases where the agent is prima facie at least acting at the time in the business of the principal. I have found no case where evidence such as was here offered has under similar circumstances been received. There was nothing to explain or to submit to the jury as to the character in which Stone acted or made declarations at this time. The plaintiff admits by its officers, who are witnesses, that it knew this was a personal transaction and consequently there was absolutely no basis upon which to found a claim that in this transaction any declaration made by Stone could be imputed to the defendant as a declaration of its agent. The proposed evidence did not point towards the possible proof of any facts as distinguished from declarations upon which to maintain an estoppel in pais against the defendant, and if such facts were to be proved, some idea of that design should be given to the court, for upon its face the evidence was not admissible.
It is in proof that the plaintiff's agents made no inquiries as to the right of Stone to sign the receipt, and it might perhaps be somewhat difficult to erect an estoppel in pais upon *Page 567 
facts which plaintiff might have found out upon inquiry, but which in truth it was ignorant of at the time of the transaction.
We think the court did not err in rejecting the evidence. There is no basis upon which a recovery in this action could be sustained, and the judgments of the courts below must, therefore, be affirmed, with costs.
All concur.
Judgments affirmed.