EDWARD S. CAMPBELL, RECEIVER, &c., DEFENDANT IN ERROR, v. THE MANUFACTURERS NATIONAL BANK, PLAINTIFF IN ERROR.

Argued November 21 and 22, 1901.—Decided March 3, 1902.

1. There is no reason that can be given, which is founded upon principle, for not applying the same rule of agency to a cashier as to other persons occupying fiduciary relations.

2. A person cannot deal with a cashier of a bank as an individual in securing a draft, and claim, after the draft is delivered, it has become the transaction of the bank.

3. While a cashier of a bank is presumed to have all the authority he exercises in dealing with executive functions, legally within the powers of the bank, or which are usually done or held out to be done by such an officer, still the test is whether the transaction is with the bank and in its business, or with the cashier personally and in his business. As to the former all presumptions are in favor of its regularity and binding force. As to the latter no such presumptions arise.

4. Upon the proof that the transaction was known to the claimant to be an individual one and not with the bank, the burthen is cast upon the claimant to establish that the act of the cashier thus done, for his own individual benefit, was authorized or ratified.

5. Neither authorization nor ratification arises from unknown concealed fraudulent transactions of a cashier. It is only known open ones, similar to the alleged dishonest ones, which work an estoppel.

6. Failure to detect that which an inspection with ordinary care would not have discovered, will not work a ratification. Where a draft on a corresponding bank is regular on its face and the entry upon the stub of the draft-book from which it is taken is also regular, there is nothing to go to a jury to establish laches in the officer of a bank for neglect to discover its fraudulent character from inspection.

7. The facts in this case show an individual transaction with Valentine, and the known fact that he paid his own debt with the bank's draft. There was no proof that his act was authorized or ratified by the directors, and there was nothing on the stub of the draft-book, or the face of the draft, when returned by the National Park Bank, to indicate that it was not a regular bank transaction, nor was there proof that by the exercise of any care, short of an investigation of the books of the bank, the president or directors of the bank would have discovered the fraudulent act of the cashier in issuing the draft in question. Under this state of the proof the court rightly directed a verdict against the plaintiff in error.

On error to the Supreme Court upon a judgment entered on a verdict directed for the plaintiff at the Essex Circuit by the trial judge.

For the plaintiff in error, *Joseph Coult, Francis Child* and *John A. Miller.*

For the defendant in error, *Richard V. Lindabury* and *Sherrerd Depue.*

The opinion of the court was delivered by

FORT, J. This is an action by the receiver of the Middlesex County Bank to recover back money paid to the plaintiff in error by George M. Valentine, who was, at the time of the payment, cashier of said bank. The payment was made by Valentine in satisfaction of his individual debt. The method of payment was by a draft of the Middlesex County Bank, drawn on the National Park Bank of New York, its correspondent, and signed "George M. Valentine, Cashier." The draft thus issued was drawn to the order of John A. Miller, attorney, and delivered to him for the plaintiff in error.

The transaction out of which the indebtedness of Valentine to the plaintiff in error, the Manufacturers National Bank, arose was the discounting of a note, made by a firm of which Valentine was a member, and endorsed by Valentine individually and others. This note, thus discounted, fell due and was protested, and afterward judgment was obtained thereon against the makers thereof and Valentine individually.

The Middlesex County Bank had no interest, directly or indirectly, in the note or its proceeds.

All these facts were known to the plaintiff in error, both before and after the judgment.

The judgment was entered March 4th, 1899.

Mr. Miller, the attorney of the plaintiff in error, after several attempts, found Valentine at the bank, in Perth Amboy, on March 13th, 1899. Payment of the judgment was demanded, and, after some talk, Valentine, in the presence of Miller, took the draft-book of the Middlesex County Bank,

containing blank drafts of that bank on the National Park Bank of New York, and filled out a draft of the Middlesex County Bank upon the National Park Bank of New York, for the sum of $7,500, to the order of J. A. Miller, attorney as aforesaid, and signed it "Geo. M. Valentine, Cashier," and handed this draft to Miller.

The draft thus delivered to Miller was not, and did not pretend to be, anything other than the draft of the Middlesex County Bank, made by its cashier, in his official capacity, against the funds of the Middlesex County Bank deposited in the National Park Bank of New York, and was intended by Valentine, and known by Miller, to be issued for the payment of the debt of George M. Valentine as an individual. With all of these facts the plaintiff in error, by its officers and its attorney, was familiar.

There is no reason, which is founded on principle, that can be given for not applying the same rule of agency to a cashier as to other persons occupying fiduciary relations. No person can act as an agent in a transaction in which he has an interest, or to which he is a party, on the side opposite to his principal. This must be so where the person dealing with the agent has knowledge of the facts.

A person cannot deal with a cashier of a bank as an individual in securing a draft, and claim, after the draft is delivered, it has become the transaction of the bank. To make the acts of the cashier valid, the transaction in which the draft is delivered must be a bank transaction, made by the cashier, within his express or implied authority, in the conduct of the business of the bank. So long as a person deals with the cashier in a matter wherein, as between himself and the cashier, he is dealing with, or has a right to believe he is dealing with, the bank, the transaction is obligatory upon the bank.

The cashier is presumed to have all the authority he exercises in dealing with executive functions legally within the powers of the bank itself, or which are usually or customarily done, or held out to be done, by such an officer.

But the test of the transaction is whether it is with the

bank and its business, or with the cashier personally and in his business. *Claflin* v. *Farmers Bank,* 25 *N. Y.* 293; *Moores* v. *Citizens National Bank,* 111 *U. S.* 156.

As to the former, all presumptions are in favor of its regularity and binding force. In the latter, no such presumption arises; in fact, upon proof that it was known to the claimant to be an individual transaction, and not one for the bank, the burthen is cast upon the claimant to establish, by proof, that the act of the cashier thus done, for his own individual benefit, was authorized or ratified.

These are fundamental principles applicable to principal and agent in every transaction arising out of that relation. *Bank of New York* v. *American Dock and Trust Co.,* 143 *N. Y.* 559, 564; *Manhattan Life Insurance Co.* v. *F. S. S. & G., &c.,* 139 *Id.* 146, 151; *Shaw* v. *Spencer,* 100 *Mass.* 382, 390, 394; *Pelrie* v. *Clark,* 11 *Serg. & R.* 377 (*Chief Justice Gibson*); *Rochester & C. T. R. Co.* v. *Paviour,* 164 *N. Y.* 281, 286; *Hutc. Ag.* (*2d ed.*) 110.

Little contention was made in this case, even by the counsel of the plaintiff in error, against the rule above stated, although some effort was made to distinguish between the rule applicable to principal and agent, as applied to a cashier, as contradistinguished from other agency relations, but we are unable to accept such a theory or to hold the rule to be any broader in the case of a cashier than as above declared.

Strong contention was made by the plaintiff in error for the right to retain the fund received for Valentine's individual debt from the proceeds of the draft of the Middlesex County Bank, upon the grounds (1) that Valentine was authorized to issue such drafts, and (2) that if he were not so authorized, his act in this case would be deemed ratified, through the knowledge of the bank's officers, obtainable from the draft itself or the records of the bank, from which they actually knew, or were chargeable, in the exercise of ordinary care, with knowing, the transaction.

The case is utterly devoid of proof that Valentine was ever authorized by anyone to draw drafts of this character for his individual account against the funds of the bank with its

New York correspondent.  It does appear that he had over-drawn his account and borrowed money on questionable se-curities, but those transactions are stated, by the letters to the banking department, to be ones with which the directors were familiar, and about which the directors knew, and for which they held securities, and in which the directors only differed with the banking department. as to the sufficiency of the security they had required Valentine to pledge for those loans.

There is no proof that those loans were not made in the usual course; nor that the directors authorized or acquiesced in the use of the bank's funds by Valentine before, or with-out, their knowledge; nor that Valentine, in any of the trans-actions out of which these obligations arose, had ever dealt with any person to create his indebtedness to the bank before the bank directors knew of it and had authorized his use of the funds; nor is there anything to show, in any of those letters to the banking department by the president of the bank, or from that department to the bank, that the directors knew he was using the funds of the bank, without their knowledge or con-sent, in his individual transactions, or that he had paid a single individual debt before they were advised of it and had received security from him for the money which he proposed to use to pay it.  It would have been an entirely different situation if he had been in the habit of drawing similar drafts against the bank's funds for his individual purposes before con-sulting the president or the directors, and they had known of, or subsequently approved, such acts.  That would have made a case within the principle ruled in Goshen Bank *v.* State of New York, hereafter considered, but that is not this case. Whatever acts are proven to have been done by Valentine, without the approval of the president or directors first ob-tained, were admittedly concealed transactions—not open ones—fraudulent acts.  It is not pretended that a single one of the thirteen drafts alleged to be fraudulent, out of over sixteen thousand honest ones, was actually authorized or rati-fied by the president or the directors; nor is it pretended

that a single open transaction of that kind was known to, or ratified by, them.

It is not concealed dishonest transactions which made a ratification, but open ones, of a character similar to the alleged dishonest ones. *Gale* v. *Chase National Bank,* 104 *Fed. Rep.* 214.

If a bank gives its cashier authority to draw drafts for his own account on its funds, or ratifies his acts in known transactions which he openly conducts, honestly or dishonestly, it will not be permitted to say that a similar transaction which he secretly and by concealment conducts does not bind it. The distinction is just there. This was the basis of the decision of the New York Court of Appeals, in *Goshen National Bank* v. *State of New York,* 141 *N. Y.* 379, upon which the plaintiff in error so strenuously relies. The opinion in that case cites the facts very meagrely. Through the courtesy of the present Chief Judge of that court I have had before me all the proofs, findings and exhibits upon which that case was decided, and an examination of the record fully sustains Judge Peckham in saying that the cashier there "had the right to draw a draft on the corresponding bank of the claimant for himself upon the same terms that he had to draw a draft for a stranger." Henry Bacon, the president, testified (at *p.* 9 of the record) that "He [the cashier] had a right to draw a draft on the Importers and Traders National Bank for himself upon the same terms that he would draw for a stranger." George Grier, the assistant cashier of the bank, testified that he was well acquainted with the cashier's methods of drawing drafts in all his transactions as county treasurer, for more than a year prior to the drawing of the fraudulent draft in controversy, and that during that period Murray "was accustomed to draw checks as county treasurer against the funds in his hands as such treasurer, on deposit in the Goshen National Bank, payable to the Goshen National Bank, in various amounts, and then, as cashier of said Goshen National Bank, to draw drafts for a similar amount on the Importers and Traders National Bank of the City of New York, against the funds of the Goshen National Bank on deposit with said

Importers and Traders National Bank, placing said drafts to his credit in said Importers and Traders National Bank as county treasurer."

There was no dispute, under the facts in that case, that practically all the time that Murray, the cashier, was county treasurer he had used the bank's drafts for his own purposes, as such treasurer, to transfer funds to New York, with the knowledge of the president, assistant cashier and directors. He was also permitted to draw such drafts to himself or a stranger, in county treasurer matters, with the same freedom that he would issue such a draft to any customer of the bank. They had allowed him to treat himself, in his official relation of county treasurer, in the matters of issuing cashier's checks or drafts, for county treasurer's account, as he was permitted to do for any other depositor or other person dealing with the bank in the ordinary course of business.

That case was, upon its facts, in exact conformity with the principle here sustained, and, upon all the cases, under the facts proven, was rightly decided. Judge Peckham himself expressly distinguishes the Goshen Bank case from cases like the one before us in *Bank of New York* v. *American Dock and Trust Co.,* 143 *N. Y.* 559, 564.

Nor will the facts in this case justify a finding of constructive notice to the directors of the Middlesex County Bank, arising from a failure to know what they would have known had they exercised ordinary care, as to the draft issued by Valentine to Miller. If the draft had been drawn to Valentine's own order, it would have been discoverable upon inspection, and some question might then have arisen. This draft was drawn to "John A. Miller, Attorney," and was regularly entered on the stub of the draft-book, and would appear perfectly regular in the account current when returned by the National Park Bank, with the vouchers, at the end of the month. A bank may issue its draft to anyone who pays for it. Is it to be said that a bank will be held to ratify a draft, fraudulently issued by its cashier, though regular on its face, because the other officers of the bank do not trace through the books of the bank to see to what account it is

charged? Upon the face of the draft no one but Miller, the attorney, and the officers of the plaintiff in error, besides Valentine, could have known the draft was for his individual debt.

That which is discernible by inspection, upon the face of a draft or record, and which needs no investigation to show it to be out of the ordinary, and therefore speaks for itself, will, no doubt, raise an implied or constructive ratification, if seen by officers or directors. And failure to exercise ordinary care in checking off vouchers or inspecting records by bank officers will, no doubt, also raise such a ratification, if it appears that, if they had so examined the same, a simple inspection thereof would have shown the facts.

They are undoubtedly chargeable with the things they know, or would have known by the exercise of ordinary care, and are estopped from denying their responsibility thereon unless repudiated within a reasonable time after such knowledge or imputed knowledge. But the facts in this case, as to the draft in question, do not bring it within this rule.

All the points here determined are fully discussed by the opinion in Lawson *v.* Beard, decided in the United States Circuit Court of Appeals, and the same conclusion reached as here. *Lamson* v. *Beard,* 94 *Fed. Rep.* 30.

Under all the cases and upon principle, under the facts in evidence, the trial court was right in directing a verdict for the plaintiff, and the judgment of the Supreme Court entered on that verdict is affirmed.

GARRISON, J. (concurring). I have not been able to see how one agent of a bank could confer general authority upon another agent of the bank to transfer the property or credits of the bank to the latter's individual creditors in payment of his personal debts. If express authority to this effect had been shown, it would not, in my judgment, have altered the case. Hence, of course, I do not consider that it was error to refuse to permit the jury to determine whether or not there was implied authority to the same end. For this reason I shall vote to affirm the judgment of the trial court. I concur in the view of Mr. Justice Fort that there was no proof of ratification of this particular transaction.

DIXON, J. (dissenting). I think that a bank cashier may be authorized by the board of directors to use the funds of the bank for his private purposes; and that the terms on which such authority may be given are within the absolute control of the board, to this extent: That when, in pursuance of the authority, the funds have been paid to a third party in payment of a debt, the fact that such party had notice that they were the bank's funds is not sufficient to warrant the bank in reclaiming them. Nor will the completed transaction be rendered voidable by the further fact that the terms on which the authority was given are such as to charge the concurring directors with indiscretion or fraud.

It is conceded in this case that the defendant and its agent, Mr. Miller, had no notice of any suspicious circumstance other than that the cashier was using the bank's funds to pay his private debt. This notice devolved on the defendant the burden of showing that such use was authorized by the board of directors.

But I dissent from the present judgment on this ground: That, in my opinion, the evidence produced at the trial made it a question for the jury whether the act of the cashier was within the authority conferred upon him by the board, and therefore the direction of a verdict for the plaintiff was wrong.

*For affirmance*—THE CHIEF JUSTICE, VAN SYCKEL, GARRISON, FORT, HENDRICKSON, PITNEY, ADAMS, VROOM. 8.

*For reversal*—THE CHANCELLOR, DIXON, COLLINS, GARRETSON, VREDENBURGH, VOORHEES. 6.