## LAHN v. SULLIVAN et al.

(Supreme Court, Appellate Division, Fourth Department. December 28, 1906.)

PRINCIPAL AND AGENT — POWERS OF AGENT — LETTERS OF ATTORNEY — CON-
    STRUCTION.

      Defendant S., after having been appointed administrator of a dece-
dent's estate, procured a power of attorney from one of the distributees,
which authorized S. to receive the rents and profits of the real estate
in which the grantor was interested, to rent and demise the premises, to
accept surrenders and releases of tenancies, to make allowances to ten-
ants, to repair buildings, fences, etc., to execute deeds, transfers, or mort-
gages, and to manage the property, and closed with a clause providing that
S. was authorized generally to manage all plaintiff's affairs of every
description so far as related to the estate of the deceased at his absolute
discretion, and as fully and effectually as plaintiff could do if present, act-
ing in a proper person. *Held*, that such power did not authorize S. as
administrator to pay money which was the proceeds of plaintiff's dis-
tributive share of the estate to himself as plaintiff's attorney in fact,
and thus absolve his surety on his administration bond from further lia-
bility therefor.

    McLennan, P. J., dissenting.

Appeal from Trial Term, Monroe County.

Action by Anna Evans Lahn against Henry J. Sullivan and another.
From an order setting aside a verdict in favor of plaintiff and granting
a new trial, she appeals. Reversed.

The action is brought to recover upon a bond given by the defendant Henry
J. Sullivan and the other defendant, the American Surety Company, upon the
appointment of Sullivan as the administrator of the estate of Rebecca B.
Evans; such appointment having been made by the surrogate of Monroe
county on January 15, 1896, the bond being in the penal sum of $40,000, dated
the 30th day of December, 1895, and in the usual form. Upon an accounting
before the surrogate of Monroe county the administrator was found charge-
able with the amount of certain distributive shares, among others the sum of
$1,010.20, which he was directed to pay to Anna Evans Lahn, the plaintiff
in this action. A decree to that effect was entered in the surrogate's office of
Monroe county on the 31st day of July, 1903. A transcript of the decree was
filed and a judgment thereupon was docketed in the clerk's office of the county
of Monroe on the 1st day of August, 1903. Thereafter an execution was is-
sued thereon to the sheriff of Monroe county, and the execution was returned
wholly unsatisfied on the 21st day of September, 1903. Thereupon this ac-
tion was commenced in the October following.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
NASH, and KRUSE, JJ.

D. W. Forsyth, for appellant.
Frederick W. Smith, for respondent surety company.

KRUSE, J. Rebecca B. Evans died intestate on the 28th day of
July, 1895, leaving her surviving as her sole heirs at law and next of
kin Jane Evans, her mother, Richard B. Evans, her brother, and two
sisters, Jane E. Collins and Anna Evans Lahn. The intestate was
a resident of this state at the time of her death. Her mother, her
brother, and her sister Jane were residents of Ireland, and Anna
Evans Lahn, her other sister, resided in the city of Schenectady,
in this state. The defendant Henry J. Sullivan seems to have acted

for the deceased as attorney in her lifetime, and in the October following her death he secured powers of attorney from the brother and sister residing in Ireland, and about a year later a similar power of attorney was given to him by Mrs. Lahn, the other sister. These powers of attorney authorized Sullivan to act for the persons giving them in matters pertaining to the estate of their deceased sister. The nature of the instruments and the authority given by them will later be stated more precisely. It seems that the residence of Mrs. Lahn was not known by her relatives and parties interested in this estate until it was discovered through the efforts of Sullivan in October, 1896. On October 11, 1896, she made herself known in a letter written by her husband to Sullivan in answer to an advertisement published in a newspaper. Within a few days thereafter Sullivan went to Schenectady and procured from her the power of attorney which has been referred to. Before procuring this last power of attorney however, he had been appointed by the surrogate of Monroe county the administrator of the estate of Rebecca B. Evans. His bond as such administrator was executed by himself as principal and by the defendant American Surety Company as surety on the 30th of December, 1895. And thereupon, and on the 15th day of January, 1896, letters of administration were issued to him by the surrogate. At the time of the execution of the bond Sullivan executed an agreement of indemnity to the surety company providing for the joint control of the estate by himself and the surety company. It will thus be seen that at the time of his appointment as administrator Sullivan had secured the powers of attorney from the brother and sister residing in Ireland, but did not obtain the power of attorney from the sister residing in Schenectady until about nine months thereafter and this last power of attorney was revoked by her, as she claims, by an instrument bearing the date of June 29, 1897, although it does not appear clearly what the principal did to accomplish the revocation beyond execution of the instrument. The mother was incompetent, and Quincy Van Voorhis, a practicing attorney of Rochester, was appointed her committee and acted for her. A decree was made by the Monroe county Surrogate's Court October 26, 1898, settling the accounts of the administrator, charging him with $17,468.88 cash and $7,153.93 in securities. The securities were directed by the decree to be assigned and delivered to the brother and two sisters of the deceased and the committee of the mother of the deceased. The remaining portion of the estate was directed to be distributed among them, with the exception of $4,536.16, which Sullivan claimed he had paid to himself as attorney in fact for the brother and the two sisters; $1,586.50 being the amount which he had received for the sister Anna Evans Lahn, the plaintiff in this suit, and claimed to have been paid by himself as administrator to himself as attorney in fact. The Surrogate's Court refused to hold that the administrator was authorized to make such payment to himself as attorney in fact, but declined at that time to pass upon the rights of the claimants to the funds, remitting the parties to such other court having jurisdiction as they might be advised to invoke. It was, however, further adjudged by that decree

that as to the personal claim and indebtedness of the administrator, and as to the moneys claimed to be held by him as attorney in fact, and all the other matters not specifically disposed of, the determination should be postponed to an adjourned day for determination; the adjourned day being January 3, 1899. Before the adjourned day an appeal seems to have been taken by the administrator from certain parts of the decree of the Surrogate's Court, among others the disallowance of payments claimed to have been made by himself as administrator to himself as attorney in fact. The decree appealed from was affirmed by this court, and a like result was had in the Court of Appeals upon a further appeal taken to that court by the administrator. The matter came back to the Surrogate's Court after the determination of the said appeals, and on a further hearing and accounting the decree of July 31, 1903, was made, which, among other things, directed the administrator to pay to Anna Evans Lahn, the plaintiff in this action, the sum of $1,010.20; that being her share of the moneys claimed by Sullivan to have been paid to himself as her attorney. A transcript of this judgment and decree was thereafter docketed in the county clerk's office of Monroe county and an execution issued thereon. The execution having been returned wholly unsatisfied, this action was brought to recover the amount under the provisions of the bond given upon Sullivan's appointment as administrator by Sullivan and his surety, the defendant American Surety Company.

The power of attorney given by the plaintiff to the defendant Sullivan in October, 1896, the giving of which the surety company claims exonerated it from liability under the bond executed by it as surety for Sullivan, the administrator, relates largely to the real estate left by the deceased, and in which the plaintiff inherited an interest. It authorizes Sullivan to receive the rents and profits of the real estate; to rent and demise the premises; to accept surrenders and releases of tenancies; to make allowances to the tenants; to repair the buildings and to insure them against fire; to repair the fences; to drain and improve the premises; to employ persons to assist in the management of them; to collect the rents and profits; to recover possession of the land; and to execute deeds, transfers, or mortgages. In general the power was to do in the management of the premises whatever he might do if he were the absolute owner. It will be observed that while the power of attorney given by the plaintiff is dated October 5, 1895, it was not executed until October 16, 1896. Sullivan evidently intended it to be executed before he was appointed administrator, for it provides that he is authorized to obtain letters of administration of the personal estate of the intestate; to recover all moneys, goods, and effects belonging to the deceased, Rebecca B. Evans; to sell the personal, as well as real, property of the deceased; to apply any moneys which may come into his hands under power of attorney to pay costs or expenses incurred by him in or about the execution of the powers contained therein. It also authorized him to adjust or compromise any action or claims between himself and her brother, her sister, or any other person, and to appear for her in any suit or proceedings brought against her and to suffer judgment or to act otherwise, as he should

think proper. After enumerating in detail the powers to which attention has been called in a general way, the power of attorney concludes as follows:

"and generally to manage all our concerns and affairs of every description so far as relates to the estate of the said Rebecca B. Evans, deceased, at his absolute discretion and as fully and effectually as we would do if we were present and acting in our proper persons."

It is contended on the behalf of the surety company that the power of attorney given by the brother and sister in Ireland was unknown to it at the time the bond in question was executed, and that it did not consent to the execution of the power of attorney given by the plaintiff, to which reference has just been made, and that it had no knowledge of any of these powers of attorney until some time thereafter, when copies thereof were served upon it; that thereafter it did consent to the drawing of checks by Sullivan as administrator upon the funds of the estate, payable to him as attorney in fact; and that it by its authorized agent countersigned such checks, and payment thereon was made to Sullivan accordingly. It seems, if such consent had been withheld, Sullivan could not have obtained moneys upon these checks; for, under the agreement of Sullivan and the surety company at the time of his appointment as administrator, these moneys could not be withdrawn without the written consent of the surety company. The agreement is quite specific in that regard, and need not be referred to here in detail. It was authorized under section 813 of the Code of Civil Procedure.

It is contended, however, upon the part of the surety company, that it was justified in giving its consent, without incurring any liability to the plaintiff for the moneys so withdrawn. The claim in that regard made on behalf of Sullivan and his surety is that Sullivan as administrator was authorized by the power of attorney to pay money to himself as attorney in fact for the plaintiff, and thus absolve his surety from further liability therefor. We think the power of attorney gave Sullivan no such authority. Upon his appointment as administrator, Sullivan was invested with the legal title to all the personal property of the deceased. It was his duty to convert it into money, to pay the debts and the expenses of administration, and to distribute what remained to the persons entitled by law to share as distributees in the estate, as determined by a court of competent jurisdiction. Until such determination and decree was made and the money paid over, the legal title to the fund remained in the administrator.

There was no occasion for a power of attorney authorizing Sullivan to receive money or personal property from this estate, for he had that power under his letters of administration. Nor was there any good reason for authorizing him to pay the money already in his possession as trustee for another to himself as trustee for the same person; for, whether he held the money as administrator or as attorney in fact for Mrs. Lahn, in either case his holding was in the nature of a trust. The giving of such authority as is claimed by Sullivan under this power of attorney, in addition to what he already had as administrator, would serve no good or useful purpose, and it should not be inferred from this general provision contained in the power of attorney,

which seems to be a résumé at its close of the specific authority theretofore given in the instrument. If it was intended to authorize Sullivan to act in this dual capacity, the power of attorney should have so stated plainly and explicitly. Wilcox v. Smith, 26 Barb. (N. Y.) 316, 351, 352; Bank of N. Y. N. B. Association v. American Dock & Trust Company, 143 N. Y. 359, 364, 38 N. E. 713. The same claim has been made by Sullivan twice in controversies arising out of this estate, and in both instances the courts have held adversely to him, once in the surrogate's proceedings referred to, and again in an action of partition of certain real estate of the deceased in this court, in which the present plaintiff was one of the plaintiffs and Sullivan was a defendant. In that case he claimed that he was entitled to recover for services claimed to have been rendered by him in connection with property turned over by himself as administrator to himself as attorney in fact. It was held that Sullivan had no such authority, and that he was not entitled to recover extra compensation in addition to his fees as administrator. To that action the surety company was not a party, but upon the accounting before the surrogate the surety company was a party.

It is claimed on behalf of the plaintiff that the decree in the Surrogate's Court is res adjudicata upon the question involved in this action, and that the surety company is concluded thereby, and may not now be heard to question the binding force of the judgment entered upon that decree against Sullivan. This claim is not without force, for an examination of the record of the proceedings in the Surrogate's Court discloses that the matter was referred to a referee by the surrogate, and that the referee reported in favor of allowing these various sums claimed to be held by Sullivan as attorney in fact of the distributees as payments to them. Upon the coming in of the report, the surrogate specifically directed the disallowance thereof. If such allowance had been permitted to stand as a payment, the adjudication would have been binding against the plaintiff in favor of the surety company, unless subsequently reversed or set aside. And so it is urged that the surety company, which was a party to the proceeding, is bound by the adjudication adversely to it upon that question.

It is, however, suggested on behalf of the surety company that the mere giving of this power of attorney, Sullivan acting under it, was so prejudicial to the surety company and so changed its position that it was released upon the bond, even if the moneys so received by the administrator with its consent under the claim that he was entitled to them as an attorney in fact, may not have been a payment as between himself and the plaintiff. We deem it unnecessary to decide these questions. We prefer to place our decision upon the broad ground that the power of attorney executed by the plaintiff to Sullivan did not authorize him to take the moneys of the estate, or any of them, coming into his hands as administrator, and pay himself in the other capacity as attorney in fact for the plaintiff and the others from whom he obtained similar powers of attorney. And so the surety company was not prejudiced by the giving of the power of attorney by the plaintiff to Sullivan, and was not exonerated from liability upon his bond by consenting to the transfer of the moneys

under the joint control of himself and the administrator to the administrator personally or nominally as attorney in fact for the plaintiff.

If these views are correct, it follows that the trial judge properly directed a verdict in favor of the plaintiff, and that he was in error in setting aside this verdict upon the motion for a new trial.

The order vacating and setting aside the verdict and granting a new trial should be reversed,. with costs.    All concur, except Mc-LENNAN, P. J., who dissents.