[No. 3047. Feb. 9, 1928.]

AMERICAN RY. EXPRESS CO. v. GALLUP STATE BANK.

[264 Pac. 947.]

Marron & Wood, of Albuquerque, for appellant.

H. C. Denny, of Gallup, and Simms & Botts, of Albuquerque, for appellee.

### OPINION OF THE COURT

WATSON, J.  The American Railway Express Company sued the Gallup State Bank to recover a sum of money which the latter had received through the wrongful act of the former's agent.

One Krueger was the agent of the express company at Wingate. He was also engaged in private business there. In his individual capacity he kept an active checking account with the Gallup bank, involving numerous good-sized transactions; some exceeding in amount the deposit in question. Being indebted to the bank more than $750, he mailed to Emmons, its cashier, 20 express money orders, drawn upon his principal, each in the sum of $50, and each of the following tenor.

### "EXPRESS MONEY ORDER.

"When countersigned by agent at point of issue C-636857 American Express Company agrees to transmit and pay on presentation to John J. Emmons or order (50) the sum of Fifty and no/100 Dollars. Not good for more than the highest marginal amount—

in no case to exceed fifty dollars. This money order should not be cashed for strangers except on personal identification.

Jas. F. Fargo, Treasurer.

"Countersigned: C. W. Krueger, Agent.
"Issued at Wingate, N. M.
"Name of remitter: C. W. Krueger. •
"Date: Dec. 31, 1920.

"Any erasure, alteration, defacement or mutilation of this order renders it void."

—with direction to the cashier that the same be placed to his credit. Within a short time thereafter he expended the sum by checking upon the bank in satisfaction of his indebtedness to the bank, and for other purposes. The bank, upon receiving the drafts, passed them to Krueger's credit, forwarded them, and they were duly honored by the express company. Some time later, after a check of Krueger's accounts, demand was made upon the bank to make restitution of the money, which it refused to do.

The cause was tried by the court, who made specific findings of fact and conclusions of law, upon which he gave judgment for the defendant. Among the findings were these:

"(8) That for some time prior to the issuing of the money orders involved in this action, the said Krueger had been accustomed to issuing money orders of said company for his own use and benefit, similar in character to the ones herein involved, which had been accepted by this bank and forwarded to the plaintiff company through its bank, and the same were always accepted and paid by said plaintiff company without any objection whatever and without any notification on the part of said company to the defendant that said Krueger had no authority to issue such orders. That such custom on the part of said Krueger was never objected to by said plaintiff company until the matters involved in this litigation arose."

"(10) That John J. Emmons, to whom the orders were made payable and who was cashier of the defendant bank, had no knowledge of any fact or circumstances that would put him on inquiry as to the validity of the orders and made no inquiry with regard to the matter, but accepted the orders and gave Krueger credit for the sum thereof.

"(11) That there is no proof in the record as to whether Krueger paid for the orders to the express company or not, and there is no proof in the record as to what if any, part of the proceeds of the orders was used by Krueger, in payments to the Gallup State Bank nor how much he used for his personal account, except as is shown by admissions in the pleadings in this case."

The conclusions of law were as follows:

"(1) That the form of money orders and the matters set forth on their faces, with the surrounding circumstances, were not sufficient to place Emmons or the Gallup State Bank on notice or inquiry as to the validity of the orders.

"(2) That the Gallup State Bank was an innocent purchaser for value without notice of the orders in due course of business.

"(3) That by accepting and paying said money orders in New York on the 4th day of January, 1921, and by accepting and paying former money orders issued by said Krueger, of a similar nature to those herein involved, without ever having protested or objected or in any way called attention of the defendant bank to any alleged invalidity of said orders, the plaintiff is now estopped from questioning the validity of said money orders as against the Gallup State Bank.

"(4) That the defendant is entitled to judgment dismissing the plaintiff's complaint, with costs."

It was alleged, and not denied, that at the time of transmitting the drafts the indebtedness of Krueger to the bank was in excess of $750.

It was stipulated, in substance, that Krueger had actual authority to issue and sell money orders "to the order of special | persons," which orders, so issued, became commercial paper.

■ ■ The most important legal proposition here presented is as to the correctness of conclusion No. 1; appellant attacking and appellee defending it. The order, as set forth above, shows upon its face that Krueger, who acted for the company as issuing and countersigning agent, was himself the remitter. 'This also appears from the instructions which he gave to the bank. The bank therefore knew that, by means of these orders, Krueger was appropriating, to his own use, appellant's money. Whether he was doing this legally depended upon his authority from his principal. Whether he was doing it honestly depended upon whether he had paid for the orders.

Counsel for appellee do not question the general rule of agency, that the principal is not bound by the agent's act when he himself is the opposite party in the transaction. But they take the position that it does not apply when the cashier of a bank, authorized to sign and issue

drafts generally, signs and issues one payable to himself, or to his creditor, and transmits it in payment of his individual debt. They urge that so to apply it would upset business and give uncertainty to commercial paper. Such distinction would also, as they assume, apply to an express company's agent authorized to issue money orders. It is upon this theory that they contend that the form of the money order did not put the bank upon notice or inquiry of an unauthorized act by Krueger. They also point out that there is no evidence to show that the drafts were not in fact paid for when issued. They admit, however, in this connection, that if the order, on its face, carries such notice "as would deprive the bank of the position of an innocent holder for value," appellant could properly recover without such proof, since the burden would be on appellee to show such payment.

Appellee's principal reliance is upon Goshen National Bank v. State, 141 N. Y. 379, 36 N. E. 316. In that case Mr. Justice Peckham, speaking for the court, commented upon the enormous use of bank drafts in the payment of debts and in commercial transactions; to the extent "that they have almost acquired the characteristics of money." He held that there was nothing suspicious in the fact that the draft in question, signed by the cashier, was made payable to, and sent to, the cashier's creditor, in payment of his individual obligation. He said that, presumptively, the cashier had performed his duty and paid for the draft.

If that decision were in point, it would stand alone except for Fort Worth National Bank v. Harwood (Tex. Com. App.) 229 S. W. 487, which seems to have followed it. On the other hand, a number of eminent courts have taken the contrary view, supporting their conclusions by sound reason and good authority. Lamson v. Beard (C. C. A.) 94 F. 30, 45 L. R. A. 822; St. Charles Savings Bank v. Edwards, 243 Mo. 553, 147 S. W. 978; Mendel v. Boyd, 71 Neb. 657, 99 N. W. 493; Campbell v. Manufacturers' National Bank, 67 N. J. Law 301, 51 A. 497, 91 Am. St. Rep. 438. In St. Charles Savings Bank v. Edwards, and in Lamson v. Beard, it is pointed out that a party, situated as appellee is here, is not a bona fide

holder for value under the Negotiable Instruments Law. In Lamson v. Beard, appellee's ( present argument is answered thus:

> "We agree with counsel for the defendant in error that the concern of the courts should not be to make it easy for persons in fiduciary positions to make way with that which is committed to their care, by relaxing this salutary rule, through considerations of the supposed necessities of business and commerce, and that the rule should not be suspended, where the opportunities for breach of trust are largest, merely because they are large. The best public policy requires that bank officers be rigidly held to the ordinary and well-understood rule. There is, we believe, no good reason to the contrary."

But Goshen National Bank v. State is clearly not in point for this reason: It appeared there that the cashier had actual authority "to draw such draft for himself upon the same terms that he would have had in case of a third party." That fact settled the matter. The agent was acting within the scope of his authority. So the principal was bound. This distinction is pointed out in Lamson v. Beard, supra, and with great pains and particularity, in Campbell v. Manufacturers' National Bank, supra, after an examination of the evidence and exhibits in the case. But, what is yet more satisfactory, Mr. Justice Peckham himself points it out in the later case of Bank of New York National Banking Association v. American Dock & Trust Co., 143 N. Y. 559, 38 N. E. 713, a decision quite in line with those cited supra.

This distinction seems to have been overlooked in the Texas case, for the court there asserts that:

> "If no restriction is placed upon the power of the president, he has the same authority to issue drafts in payment of his personal debt as he has to issue them to strangers."

It then reasons:

> "If the presumption that the officer is guilty of misappropriating the funds be indulged, then the duty to make inquiry as to the bona fides of the transaction arises as a matter of law, but not otherwise. The presumption of honesty, rather than dishonesty, on the part of an officer clothed with authority, should be indulged."

The reasoning is supported by the Goshen National Bank Case, but the assertion is not, nor is it supported by the principles of agency as we understand them.

It is possible to explain the Texas case in another way. It may be that the court considered the authority of the president established by proofs which it mentions of the existence of a custom in banking circles in Fort Worth. If that is the basis of decision, we find no lack of harmony in the cases, and the matter works out thus: A bank, in the issuance of drafts, can operate only through an agent. One receiving such draft may rely upon the actual or ostensible authority of the agent, and the bank is bound if the agent has acted within the scope of such actual or ostensible authority. It is within the ostensible authority of a cashier to issue drafts to third parties, but not to issue them to or for himself. If the draft, on its face, discloses that it was issued by the cashier to or for himself, the party receiving it is put on notice that the cashier acted beyond the scope of his ostensible authority. Of course, there may have been actual authority to issue such a draft. If so, the only question is whether the draft had been paid for. Here the presumption of honesty might prevail. If the principal puts it within the power and authority of the agent to act dishonestly, he may well be held to have assumed the risk. Such is the effect of Goshen National Bank v. State, supra. But one receiving a draft not within the ostensible authority of the agent to issue is placed under the burden of proving, either that the bank assumed the risk by granting actual authority, or that the draft, though unauthorized, was actually paid for. St. Charles Savings Bank v. Edwards, supra; Mendel v. Boyd, supra; Campbell v. Manufacturers' National Bank, supra.

Appellee says that the point has not been decided in the Supreme Court of the United States. The principle was decided, however, in West St. Louis Savings Bank v. Parmalee, 95 U. S. 557, 24 L. Ed. 490, where it was held that the cashier of a bank "certainly * * * is not presumed to have power, by reason of his official position, to bind his bank as an accommodation indorser of his own promissory note."

It is our view, therefore, that conclusion No. 1 is erroneous. Though conclusion No. 2 is not particularly cal-

led in question, it appears, also, to be erroneous, from what has been said and the authorities cited.

Despite the error in these two conclusions, the judgment might still be sustained upon finding 8 and conclusion 3. The conclusion bases an estoppel upon (a) the honoring of the drafts in question, and (b) the honoring of previous drafts of the same kind. Of course, prior dealings in the course of which appellant had uniformly honored drafts of the same kind would be a very important fact in the case. It could, no doubt, be shown by way of estoppel. It would also constitute substantial evidence upon which to base a finding that, by acquiescence, Krueger had acquired authority to use money orders in his own individual business. Appellant contends, however, that there is no substantial competent evidence to show such previous course of dealing. Whether the evidence, such as it is, was competent, we need not consider. We do not deem it substantial. The bank's cashier, testifying with hesitation and uncertainty, finally summed up thus all there is on this point:

"Q. Now, all money orders from Wingate drawn like these orders were drawn by Krueger and previously with the Gallup State Bank for Krueger's credit, were any of them, before this twenty that were herein issued, ever rejected or turned down or refused by the express company? A. No, sir; I would like to amend my answer, and state that it is my best recollection we did receive two deposits. I will not state that as a matter of absolute fact, because I could not recollect, but it is my impression if we ever received any on prior occasions they did pay them."

Appellee had not alleged any such prior course of dealing. The question arose only incidentally, and, apparently, accidentally at the trial. We do not think that finding 8 finds substantial support in this evidence.

It is an unquestioned fact however, that after receipt of the orders by the bank they were forwarded in due course and honored by appellant. It is also true that no objection or demand for restitution was made for some time. These facts are set up as an estoppel. It is true that the infirmity of the orders was as readily apparent to the appellant when it honored them as to appellee when it accepted them. It was no doubt the duty of appellant

to notice the infirmity, and either to dishonor the orders or to make prompt inquiry and protest. But if failure to perform that duty is to constitute an estoppel, it must appear that appellee was prejudiced by the failure. Unless the bank, in reliance upon the honoring of the orders, changed its position to its detriment, there is no estoppel. First National Bank of Clayton v. Harlan, 30 N. M. 356, 234 P. 305; Hathaway v. County of Delaware, 185 N. Y. 368, 78 N. E. 153, 13 L. R. A. (N. S.) 273, 113 Am. St. Rep. 909. It is neither alleged nor found that there was any such change in the bank's position. So we cannot affirm the judgment on the theory that the affirmative defense of estoppel was made out.

Holding these views, we are compelled to reverse the judgment and to remand the cause for new trial; and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.